UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Gina McKeen-Chaplin, individually, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Franklin American Mortgage Company and DOES 1-50, inclusive,<br><br>Defendant. | Case No: C 10-5243 SBA<br><br>**ORDER**<br><br>Docket 63 |

This is a wage-and-hour class action and collective action suit brought by Plaintiff Gina McKeen-Chaplin ("Plaintiff") on behalf of herself and all others similarly situated against Defendant Franklin American Mortgage Company ("Defendant"). Plaintiff alleges that she and the putative class members were denied proper compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; California Labor Code §§ 201-203, 226, 510, 512, 1194; IWC Wage Order No. 4; and California Business & Professions Code § 17200 et seq. ("UCL"). The parties are presently before the Court on their joint motion to approve FLSA settlement and dismiss this action with prejudice. Dkt. 63. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion without prejudice, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

On November 18, 2010, Plaintiff commenced the instant action. Compl., Dkt. 1. From December 27, 2010 to October 11, 2011, thirteen individuals filed written notice of their consent to join the FLSA aspect of this action. See Dkt. 17-19, 22-23, 25, 42, 44, 51, 56-59.

On January 12, 2011, Plaintiff filed a first amended complaint ("FAC") alleging federal and state law claims based on Defendant's misclassification of mortgage underwriters as exempt employees. FAC, Dkt. 24. Specifically, the FAC alleges six claims for relief: (1) failure to pay overtime wages in violation of the FLSA; (2) failure to pay overtime wages in violation of Labor Code §§ 510 and 1194, and IWC Wage Order No. 4; (3) failure to pay all wages due within the time specified by law in violation of Labor Code §§ 201-203; (4) failure to provide accurate wage statements in violation of Labor Code § 226, and IWC Wage Order No. 4; (5) failure to provide meal breaks in violation of Labor Code § 226 and 512, and IWC Wage Order No. 4; and (6) violation of California Business & Professions Code §17200 et seq. FAC, Dkt. 24.

After the Court denied Defendant's motion to dismiss the FAC on September 13, 2011, Dkt. 52, the parties engaged in settlement discussions. Schug Decl. ¶ 2, Dkt. 63-2. On June 6, 2012, the parties reached an agreement to settle Plaintiffs' FLSA claims for $165,000. Id. ¶ 3; Joint Mtn. at 2.[1] The proposed settlement allocates the $165,000 settlement amount as follows: (1) $55,000 in attorneys' fees (which is 33% of the settlement amount); (2) $2,373.94 in costs; and (3) $107,626.06 to be distributed to the fourteen Plaintiffs on a pro rata basis based on their actual payroll data and their individual overtime estimates. Id. ¶ 4; Joint Mtn. at 3. In exchange for their settlement payments, each Plaintiff has agreed to release Defendant and others from "any and all claims, . . . whether known or

---

[1] The settlement does not include a FLSA collective action or a Rule 23 state class action. Joint Mtn. at 2. While Plaintiff filed a motion to conditionally certify a collective action under the FLSA on March 11, 2011, Dkt. 34, this case was settled before the Court ruled on the motion. Plaintiff did not file a motion for class certification under Rule 23 prior to the settlement of this case.

unknown, arising from, relating to, or in any way connected with [their] employment with or termination of employment from [Defendant]. . . ."  Schug Decl. ¶ 5, Exh. A.[2]  On September 4, 2012, the parties filed the instant motion, which seeks approval of the FLSA settlement and dismissal of this action with prejudice.

## II.   DISCUSSION

### A.   FLSA Settlement

The FLSA requires employers to pay their employees time and one-half for work exceeding forty hours per week.  29 U.S.C. § 207(a)(1).  Section 216(b) of the FLSA allows employees to represent similarly situated co-workers in an action against their employer for failure to pay wages owed.  29 U.S.C. § 216(b) ("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.").

A settlement of an action under the FLSA differs from the settlement of other claims.  The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours.  Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 739 (1981).  An employee's right to a minimum wage and to overtime pay under the FLSA is nonwaivable; thus FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.  Id. at 740.  Employees may not negotiate away liquidated damages or back wages in the interest of achieving a settlement.  See Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945); D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114-115 (1946).

Despite this general rule, the Eleventh Circuit has explained that an FLSA claim can be settled in two ways.  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353

---

[2] In support of their joint motion, the parties have submitted a "sample" of the settlement agreement that each Plaintiff has signed.  Schug Decl., Exh. A.

(11th Cir. 1982).³  First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  Id.  Second, an employee may settle and waive claims under the FLSA if the parties present to a district court a proposed settlement agreement, and the district court enters a judgment approving the settlement.  Id.  Before approving an FLSA settlement, the court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute."  Id. at 1354-1355.  If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."  Id. at 1354.

### B. Analysis

#### 1. Bona Fide Dispute

This case involves disputed issues of FLSA coverage and potential liability, which constitutes a bona fide dispute.  See Dkt. 48.  As illustrated by the arguments set forth in Defendant's opposition to Plaintiff's motion for conditional certification of a collective action under the FLSA, a bona fide dispute exists regarding whether Defendant's mortgage underwriters are non-exempt "production" workers.  See id.  Further, the parties have represented in the instant motion that disputes exist regarding the proper damages measure in this case,⁴ whether liquidated damages and the three-year statute of limitations for willful violations of the FLSA are available, and the amount of overtime hours that the Plaintiffs actually worked.  Joint Mtn. at 5.

---

³ While the Ninth Circuit has not specifically addressed the question of whether FLSA claims may only be settled and resolved in two ways, district courts in the Ninth Circuit have followed Lynn's Food Stores.  See, e.g., Khanna v. Inter-Con Sec. Systems, Inc., 2012 WL 4465558, at *10-11(E.D. Cal. 2012); Campanelli v. Hershey Co., 2011 WL 3583597, at *1 (N.D. Cal. 2011); Lee v. The Timberland Co., 2008 WL 2492295, at *2 (N.D. Cal. 2008); Yue Zhou v. Wang's Restaurant, 2007 WL 17230, at *1-3 (N.D. Cal. 2007).

⁴ Plaintiffs contend that they are entitled to time-and-one-half of their regular rate of pay for each overtime hour worked.  Joint Mtn. at 5.  Defendant, relying on Overnight Motor Transp. Co. v. Missel, 316 U.S. 572 (1942), contends that the proper measure of damages in a misclassification case is the half-time methodology referred to as the "fluctuating workweek method."  Id.

### 2. Fair and Reasonable

A district court may approve an FLSA settlement if the proposed settlement reflects "a reasonable compromise over [disputed] issues." Lynn's Food Stores, 679 F.2d at 1354. The parties contend that the settlement is a fair and reasonable resolution of this action "because the payments to Plaintiffs are substantial, and they represent a reasonable compromise of Plaintiffs' FLSA claims." Joint Mtn. at 6. According to the parties, a settlement totaling $165,000 for fourteen Plaintiffs is "certainly a reasonable compromise in light of the risks of litigation." Id. These conclusory assertions are not supported by any evidence or analysis. Instead, the parties offer the following vague and perfunctory statement: "based on the calculations of Plaintiffs' counsel, if the Court were to apply the fluctuating workweek method of calculating back wages, and award overtime for a two-year statutory period, Plaintiffs' liquidated FLSA damages could drop to approximately $116,000. Given all of the factors affecting the damages calculations, the amounts paid in the settlement are eminently reasonable." Schug Decl. ¶ 3.

Absent more information and analysis, the Court cannot conclude that the settlement is a fair and reasonable resolution of this action. The parties have not provided the Court with any information that would enable the Court to evaluate whether $165,000 is a reasonable settlement in light of the maximum recovery Plaintiffs could have obtained if the action were concluded on the merits in their favor. The instant motion does not provide estimates regarding the number of overtime hours worked by each Plaintiff and information regarding the potential range of recovery for each Plaintiff. See Khanna, 2012 WL 4465558, at *11 (rejecting FLSA settlement in part because counsel provided no information about the potential range of recovery). Indeed, the parties have not provided the Court with any specific information or analysis explaining how and why they arrived at the settlement amount of $165,000. Nor have they identified the settlement payment received by each Plaintiff and explained how they arrived at the specific amount allocated to each Plaintiff.

The Court also has concerns with the scope of the general release provision contained in the settlement agreements signed by Plaintiffs, which provides that each Plaintiff "fully" and "completely" releases Defendant and others from "any and all claims . . . whether known or unknown, arising from, relating to, or in any way connected with [Plaintiff's] employment with or termination of employment from [Defendant]. . . ." Schug Decl., Exh. A ¶ 3. Courts have found that overly broad release provisions, which release a Defendant from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements. See Moreno v. Regions Bank, 729 F.Supp.2d 1346, 1347, 1350-1352 (M.D. Fla. 2010) (FLSA settlement); Hogan v. Allstate Beverage Co., Inc., 821 F.Supp.2d 1274, 1284 (M.D. Ala. 2011) (same); Gambrell v. Weber Carpet, Inc., 2012 WL 5306273, at *2, 5 (D. Kan. 2012) (same); see also Bond. v. Ferguson Enterprises, Inc., 2011 WL 284962, at *7 (E.D. Cal. 2011) (finding release overbroad in class action where release did not track the extent and breadth of Plaintiffs' allegations and released unrelated claims of any kind or nature up to the date of the agreement); Kakani v. Oracle Corp., 2007 WL 1793774, at *2-3 (N.D. Cal. 2007) (rejecting a settlement in part because of the "draconian scope" of the proposed release, which, among other things, released and forever discharged the defendant from any and all claims that were asserted or could have been asserted in the complaint whether known or unknown).

Here, the "General Release and Covenants" provision in the "sample" settlement agreement provides:

> a. In return for the consideration herein, the sufficiency of which is acknowledged, McKeen-Chaplin hereby fully, finally, completely, and generally releases the Releasees[5] from any and all claims, actions, demands and/or causes of action, of whatever kind or character, including, but not limited to, any claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and its amendments; Section 1981 of the Civil Rights Act, 42 U.S.C. § 1981, the Older Workers Benefit Protection Act; the Age

---

[5] The "Releasees" are defined as "[Defendant] and DOES 1-50, their parents, affiliates, predecessors, successors, subsidiaries, divisions, assigns, officers, directors, shareholders, representatives, employees, former employees, attorneys, insurers and agents." Schug Decl., Exh. A ¶ 1.

>      Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq.; the Americans With Disabilities Act, 42 U.S.C. § 121 1, et seq.; the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq.; the Fair Labor Standards Act, 29 U.S.C. § 301, et seq.; the Sarbanes-Oxley Act of 2002, Pub, L. 107-204, 116 Stat. 745; California Labor and Government Codes; any California Wage Order the California Constitution; the Fair Employment & Housing Act; Private Attorney Generals' Act of 2004; the California Confidentiality of Medical Information Act; any claims for breach of contract, tortious interference with employment, negligent supervision, outrageous conduct, intentional infliction of emotional distress, defamation, libel, slander, assault, battery, false imprisonment, and any other claims, whether known or unknown, arising from, relating to, or in any way connected with McKeen-Chaplin's employment with or termination of employment from Franklin American including, without limitation, any claims for attorneys' fees and costs that she, her heirs, administrators, executors, personal representatives, beneficiaries, and assigns may have against any of the Releasees for compensatory or punitive damages or other legal or equitable relief of any type or description as of the Effective Date of this Agreement as defined below. McKeen-Chaplin does not waive any rights that may arise subsequent to the execution of this Agreement provided, however, that nothing contained in this Paragraph shall be deemed or construed to be a release of any term or condition of this Agreement.
>
>      b.      The claims, causes of action, security interests, liabilities, and judgments released in Paragraph 3(a) above shall be referred to collectively herein as the 'Released Claims.'
>
>      c.      McKeen-Chaplin hereby covenants and agrees that she will forever refrain and forebear from commencing, instituting, or prosecuting any lawsuit, action, or other proceeding against any of the Releasees, individually or collectively, based on, arising out of, or connected with any of the Released Claims.

Schug Decl., Exh. A ¶ 3 (footnote added).

The settlement agreement further provides that:

> [T]he release . . . is intended to include in its effect, without limitation, claims that [McKeen-Chaplin] did not know or suspect to exist at the time of execution hereof, regardless of whether the knowledge of such claims, or the facts upon which they might be based, would materially have affected the settlement of this matter, and that the consideration given under this Agreement is also for the release of those claims and contemplates the extinguishment of any such unknown claims. In furtherance of this settlement, McKeen-Chaplin waives any rights she may have under California Civil Code section 1542 (and other similar statutes arid regulations). Section 1542 states:
>
>> A general release does not extend to Claims which the creditor does not know or suspect to exist in her or her favor at the time of executing the release, which if known by her or her must have materially affected her or her settlement with the debtor.

Schug Decl., Exh. A ¶ 4(b); see also id. ¶ 5.

The Court finds that the parties have failed to demonstrate that it would be fair and reasonable for the Court to enforce the broad general release provision contained in the settlement agreements.  The provision does not track the breadth of the allegations in this action and releases unrelated claims, whether known or unknown, that the Plaintiffs may have against Defendant.  See Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 303 (E.D. Cal. 2011) (finding release proper and not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants"); Vasquez v. Coast Valley Roofing, Inc., 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009) (finding release proper because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants.").  The parties have not explained why the release of "any and all claims . . . whether known or unknown, arising from, relating to, or in any way connected with [Plaintiff's] employment with or termination of employment from [Defendant]" is fair and reasonable.  There has been no showing that Plaintiffs have been independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due, including, among others, claims for discrimination under Title VII, intentional infliction of emotional distress, and "outrageous conduct."  See Moreno, 729 F.Supp.2d at 1351 ("[A]n employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.").  Nor has there been a showing that the Plaintiffs have a full understanding of what they are releasing in exchange for a settlement payment.  There is no evidence that Plaintiffs have being fully informed of the consequences of the release provision.

### 3.    Attorneys' Fees and Costs

The FLSA requires that in any action to enforce § 207 of the Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Here,

Plaintiffs' counsel requests attorneys' fees in the amount of $55,000 (i.e., 33% of the settlement amount), plus costs in the amount of $2,373.94. Joint Mtn. at 6. Given the parties' failure to demonstrate that the settlement is a fair and reasonable resolution of this action, the Court finds that a ruling on the propriety of the fee award and costs requested by Plaintiffs' counsel is premature. The Court notes that while Plaintiffs' counsel submitted documentation in support of the costs requested, counsel failed to submit time records justifying the fee award requested. Thus, in the event that the parties file a renewed motion to approve FLSA settlement, the Court directs Plaintiffs' counsel to support its request for attorneys' fees with contemporaneous time records setting forth the time expended on this case and the hourly rates charged.

### III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. The parties' joint motion to approve FLSA settlement and dismiss this action with prejudice is DENIED without prejudice to the filing of a renewed motion that corrects the deficiencies identified above.

2. This Order terminates Docket 63.

IT IS SO ORDERED.

Dated: 12/18/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge